# 23-0857-cv

## United States Court of Appeals

*for the*

## Second Circuit

DBW INVESTMENTS, LLC, GOLOCK CAPITAL, LLC,

*Plaintiffs-Counter Defendants-Appellees,*

– v.–

VNUE, INC.,

*Defendant-Counter Claimant-Appellant,*

CROSSOVER CAPITAL FUND II, LLC, DAVID WHITLOCK,
CHRISTOPHER GOROG, KENNETH LUSTIG,

*Counter Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-COUNTER CLAIMANT-APPELLANT

MARK R. BASILE
MARJORIE M. SANTELLI
THE BASILE LAW FIRM, P.C.
*Attorneys for Defendant-Counter
Claimant-Appellant*
390 North Broadway, Suite 140
Jericho, New York 11753
(516) 455-1500

CP COUNSEL PRESS    (800) 4-APPEAL • (322465)

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT……………………………………………………………1

ISSUE PRESENTED…………………………………………………………………...…..2

SUMMARY OF THE ARGUMENT…………………………………………………………...3

R. 26.1 DISCLOSURE…………………………………………………………………4

STATEMENT OF THE CASE…………………………………………………………6

I.  BACKGROUND ..................................................................................................... 6

        A.    The Loans .................................................................................. 6

        B.    VNUE Is Unable to Repay the Loans, and the Parties Amend the Notes ............ 7

    1.   The Amendments Add a Floating-Price Conversion Option, and Warrants ...................... 7

        C.    Performance,  Plaintiff's Conversions and VNUE's Eventual Default ................ 8

II. PROCEDURAL HISTORY ...................................................................................... 8

        A.    Plaintiffs Sue for Breach of the Notes for Unpaid Principal and Interest, VNUE's Refusal to Convert the Notes, and for "Failure to Deliver" the Warrants. ................................ 8

    1.   Counts 5 and 6 - Breach of Contract and Damages for "Failure to Deliver"  Warrants. .... 9

        B.    The *Adar Bays* Opinion and VNUE's Usury Defense. ...................................... 10

    1.   The Delivery of the Warrants Remained a Disputed Fact, and Claims 5 and 6 Were Listed as Claims that "Remain to be Tried" in the Pre-Trial Order. .................................................... 12

        C.    The Court's Factfinding Procedure for a Bench Trial ......................................... 12

        D.    "The Sole Dispute In This Bench Trial Is Whether Vnue Has Established The Affirmative Defense Of Usury." .............................................. 13

ARGUMENT

I.  THE DISTRICT COURTS FINDING MUST BE SET ASIDE ............................................... 16

    A.    Legal standard ................................................................................................ 16

II. A SEARCH OF THE RECORD REVEASLS NO EVIDENCE THAT PLAINTIFFS ATTEMPTED TO EXERCISE THE WARRANTS-- OR THAT VNUE REFUSED TO ALLOW THE WARRANTS TO BE EXERCISED .................................................................. 17

    A.    Evidence Before the Court Pertaining to Claims 5 and 6 .................................. 17

1.   Whitlock Declaration. ........................................................................................ 18

2.   The Amended Complaint .................................................................................... 19

3.   VNUE's 2023 Annual Report on File in the SEC Public Database ................................. 19

4.   Exhibit 15 to the Whitlock Declaration. ............................................................ 20

III.   NO EVIDENCE SUPPORTS CLAIMS 5 AND 6 ......................................................... 21

IV.   CONCLUSION ...................................................................................................... 23

# TABLE OF AUTHORITIES

*Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612 (2021), .....................i, 10, 11

*Anderson v. Bessemer City*, 470 U.S. 564 (1985).....................................18

*Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866 (2d Cir. 1994) ..............18

*Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376 (2d Cir. 2006) .......................25

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ..................................25

*Golock Capital, LLC v. VNUE, Inc.*, No. 21cv8103 (DLC), 2023 U.S. Dist. LEXIS
95761, (S.D.N.Y. June 1, 2023). ...........................................................................1

*Hermanowski v. Acton Corp.*, 580 F. Supp. 140 (E.D.N.Y. 1983) *aff'd,* 729 F.2d 921
(2d Cir. 1984)..........................................................................................................24

*Lucente v. IBM*, 310 F.3d 243 (2d Cir. 2002).........................................................24

*Petereit v. S.B. Thomas, Inc*., 63 F.3d 1169 (2d Cir. 1995)....................................18

*Reiss v. Financial Performance Corp.* 97 N.Y.2d 195 (2001)................................25

*United States v. United States Gypsum Co.*, 333 U.S. 364 (1948) .........................18

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291. The United States Court for the Southern District of New York issued an Opinion and Order holding that Plaintiffs were entitled to judgment on their claims against Defendant-Appellant. *See Golock Capital, LLC v. VNUE, Inc.*, No. 21cv8103 (DLC), 2023 U.S. Dist. LEXIS 95761, (S.D.N.Y. June 1, 2023). The district court entered judgment on June 16, 2023. Defendant-Appellant timely filed a Notice of Appeal on June 1, 2023.

.

# ISSUE PRESENTED FOR REVIEW

**Issue One:**

Whether the court committed clear error when it made the finding of fact that "Plaintiffs tried to obtain shares under the Warrants pursuant to the Second Amendments, VNUE also refused to allow the Warrants to be exercised and never issued these shares to the Plaintiffs."

Short Answer: Yes, the court's finding must be set aside because no evidence of record supports it.

Standard of Review: Clearly Erroneous, but de novo to the extent that the finding also serves as a conclusion of law in regard to Defendant-Appellant's liability for breach of contract.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant VNUE, Inc., discloses and certifies that it is a publicly held corporation; that no publicly held corporation owns 10% or more of its stock, and that it has no affiliates and/or subsidiaries that are publicly held.

## SUMMARY OF THE ARGUMENT

Defendant-Appellant VNUE, Inc., ("VNUE") challenges the district court's June 1, 2023 Opinion and Order to the extent that it held VNUE liable for breach of contract for "failure to deliver" certain stock purchase warrants (Counts 5 and 6 of the Complaint) and the final judgment awarding a total of $762,203.60 in damages for that breach.  Nowhere in the Opinion (or elsewhere) did the court assess whether VNUE had committed the breaches alleged under claims 5 and 6.  Instead, the court's decision on claims 5 and 6 is embodied in a single (erroneous) finding of fact, which states:

> [A]lthough the Plaintiffs tried to obtain shares under the Warrants pursuant to the Second Amendments, VNUE also refused to allow the Warrants to be exercised and never issued these shares to the Plaintiff.

Opinion and Order, Special Appendix ("SPA") at 10.  *Golock Capital, LLC v. VNUE, Inc.*, No. 21cv8103 (DLC), 2023 U.S. Dist. LEXIS 95761, at *18-19 (S.D.N.Y. June 1, 2023).  The above-quoted finding is demonstrably wrong—not only is there no evidence to support it, no *such claim was ever alleged by either party*.  Plaintiffs *never claimed* that they attempted to exercise the warrants (*i.e.,* "tried to obtain shares") or that VNUE refused to allow exercise of the warrant.  Plaintiffs claimed that VNUE failed to "issue" the *warrant contract* itself, which allegedly prevented Plaintiffs from *attempting* an exercise.  More precisely, the

4

"failure to deliver" charge is based on VNUE's failure deliver a signed copy of the warrant agreement to the Plaintiffs.

For the reasons discussed below, this Court should set aside the trial court's finding of fact quoted above, and remand the matter to the district court for a proper adjudication of Claims 5 and 6.

## STATEMENT OF THE CASE

## I.    BACKGROUND

Defendant-Appellant VNUE is a music technology company that records live concerts and sells that content.  In 2017 and 2018 Plaintiffs Golock Capital, LLC ("Golock") and DBW Investments, LLC ("DBW"; together, "Plaintiffs") made seven loans to VNUE via the purchase of seven convertible promissory notes from VNUE.  ECF 137 at 1.

## A.    The Loans

Plaintiffs DBW and Golock lent VNUE funds via the purchase of several nine-month convertible promissory Notes, in the aggregate, totaling principal amount of approximately $350,000.  The Notes each contained a conversion feature allowing the lenders to convert all or portions of the principal and interest into shares of VNUE stock, essentially using the debt under the Note to "purchase" shares at a fixed conversion price.

**B.** **VNUE Is Unable to Repay the Loans, and the Parties Amend the Notes**

**1.** **The Amendments Add a Floating-Price Conversion Option, and Warrants**

VNUE was unable repay the Notes on the due dates, and the parties executed an amendment to the Notes that, inter alia, reset the due dates for all six Notes to November 30, 2018. In return, the conversion option was changed from "fixed price" to "fixed discount," which allowed the lender to "convert" the debt into stock at a 58% discount to the market price at the time of conversion.

Second Amendments. The maturity date for the original Amendment passed, and VNUE was still unable to meet its payment obligations. Hence, the parties executed a second amendment, which extended the maturity date to July 31, 2019. The Second Amendments also changed the discount in the conversion option from 58% to 50% of the market price.

Finally, the Second Amendments required VNUE to issue a stock purchase warrant to both Golock and DBW; the Golock Warrant gave Golock the right to purchase 12,833,333 shares at $0.00475 per share, and the DBW Warrant gave DBW the right to purchase 2,966,986 shares at the same strike price of $0.00475 per share. SPA- 10.

### C. Performance, Plaintiff's Conversions and VNUE's Eventual Default

The Second Amendment was executed on April 29, 2019. Between July and November 2019, Golock effected five conversions under the Notes, converting $24,387.50 in debt into stock estimated fair market value of $64,000, and VNUE made two interest payments to the Plaintiffs of $5,874 and $2,517. In December 2019 Golock submitted a sixth conversion notice, but that conversion was not honored; Golock submitted a seventh notice of conversion on July 7, 2021, but that notice was rejected, and the requested shares were never delivered. A dispute ensued and Plaintiffs filed suit. *Id.*

## II. PROCEDURAL HISTORY

### A. Plaintiffs Sue for Breach of the Notes for Unpaid Principal and Interest, for VNUE's Refusal to Convert the Notes, and for "Failure to Deliver" the Warrants.

On September 30, 2021 Plaintiffs filed suit in the Southern District of New York, alleging six claims for breach-of-contract and seeking damages, and a seventh claim seeking declaratory judgment and specific performance. As set forth in the Complaint, the six causes of action were stated as:

**Counts 1 and 2** ("Breach of the Golock [and DBW] Notes"): Plaintiffs alleged that VNUE defaulted on the Notes as Amended and that they are therefore due a total of $575,281.95 in unpaid principal, interest and default penalties.

8

**Counts 3 and 4** ("Breach of contract - Refusing to Convert the Golock [and DBW] Notes"): Plaintiffs alleged multiple breaches based on VNUE's failure to honor Golock's requests for conversion, and sought damages for the value of the shares it should have received upon conversion, in the amount of at least $5,000,000.00. A- 16.

## 1.  Counts 5 and 6 - Breach of Contract and Damages for "Failure to Deliver" Warrants.

In Counts 5 and 6, Plaintiffs alleged that "VNUE failed and refused to issue" the warrants" to them. A-16 at ¶5.   However, the Complaint elsewhere describes the lack of "issuance" of the warrant was more precisely a claim that VNUE had failed to provide a signed copy of the warrant agreement, alleging that  "Plaintiffs prepared and submitted to VNUE for signature the GOLOCK and DBW Warrants" but that "VNUE never signed or returned the GOLOCK and DBW Warrants" despite Plaintiff's repeated requests.  A-16 at ¶¶40, 41.  Importantly, Plaintiffs do not claim that they attempted to exercise the warrant and that VNUE refused – they  contend that were "prevented from acquiring" the stock because of VNUE's "failure to deliver" a signed copy of the warrant contract.  A-16 at ¶¶ 95, 100.

**No Damages Calculation**: The Complaint provided no explanation for the amounts purportedly due under claims 5 and 6, stating that stock value would be proven at trial. *See Exhibits* A-16.

In its Answer to the complaint VNUE, admitted that it never signed or returned the warrant agreement, but denied that it had "failed to deliver" the warrant or otherwise prevented Plaintiffs from exercising the warrant.

## B.    The *Adar Bays* Opinion and VNUE's Usury Defense.

Two weeks after Plaintffs commenced the action, the New York Court of Appeals decided *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612 (2021), which had direct application to the convertible promissory Notes in this case. *Adar Bays* clarified that under New York usury law, the interest rate on a convertible promissory note must include the value of a fixed-discount conversion option (which were added to the Notes in the first and Second Amendments). Plaintiffs responded by filing an amended complaint, which kept the original claims but added statements claiming Plaintiffs lack of intent to charge usurious interest, and added an eighth claim for unjust enrichment. *See* A-16.

**VNUE Files Several Motions Related to Usury**. In its Answer, VNUE alleged several affirmative defenses, including a claim that the Notes were usurious and void under New York law and *Adar Bays*. A-172. VNUE subsequently filed

an amended answer with counterclaims under RICO (for collection of unlawful debt) and Federal securities law. A-326. The securities law claim was ultimately withdrawn, and the court granted Plaintiffs moved to dismiss the RICO claims on February 14, 2023. *See* Order, A-536. In December 2022 VNUE moved for partial summary judgment on the ground that two of the Notes were usurious based on an excessive OID[1] which the court denied. *See* A-545, A- 552. On April 27, 2023, VNUE moved for summary judgment, claiming that the value of the fixed-discount conversion option rendered the Notes criminally usurious under *Adar Bays*. *See* A-556. The court denied VNUE's motion from the bench at a pre-trial conference on May 18, 2023. *See* A-850.

Importantly, none of the motions (or the court's opinions disposing of them) addressed Claims 5 and 6 or the factual allegations underlying those claims. However, because a finding of criminal usury would void the loan contract— including the Warrants, arguments against Claims 5 and 6 would be moot if VNUE proved the Notes were usurious.

---

[1] Original Issue Discount.

**1. The Delivery of the Warrants Remained a Disputed Fact, and Claims 5 and 6 Were Listed as Claims that "Remain to be Tried" in the Pre-Trial Order.**

Despite the possibility of mootness, the facts alleged in Claims 5 and 6 were expressly disputed by the parties throughout the case. VNUE's proposed finding of fact and conclusions of law claimed that VNUE had delivered the warrants to Plaintiffs, A-744 at ¶¶ 22, 39, and Plaintiffs proposed findings states the opposite— that "VNUE never issued to plaintiffs the warrants pursuant to GOLOCK Amendment 2 and DBW Amendment 2." A-785. Further, the parties' Joint Pretrial Order includes Claims 5 and 6 among the "Summary of Claims and Defenses that Remain to be Tried." A-823.

**C. The Court's Factfinding Procedure for a Bench Trial**

The court apprised the parties of its procedures for determining disputed facts at a September 2022 scheduling conference, stating:

> If this is a nonjury proceeding, I don't have summary judgment practice in the ordinary course because with your pretrial order in a nonjury case you'd be giving me, in essence, the equivalent to your summary judgment papers. But instead of deciding whether there is a disputed issue of fact, I decide the issues of fact at the nonjury trial. So with your pretrial order in a nonjury case, you give me findings of fact, conclusions of law, any trial memorandum you want, affidavits constituting the direct testimony of your witnesses, and the exhibits that you wish to rely on in your case in chief. I prepare a draft opinion based on that material.

A-407, Tr. at 20-21.

**D.** **"The Sole Dispute In This Bench Trial Is Whether Vnue Has Established The Affirmative Defense Of Usury."**

By the time of the May 18, 2023 pre-trial conference, (trial was scheduled for May 23, 2023) the court had apparently decided to narrow the scope of issues to be determined at trial. The court instructed the parties that the only issue for trial was VNUE's affirmative defense of usury, noting that Plaintiffs had withdrawn Claims 3, 4 and 7. Tr., A-852. The parties fully complied with this directive; Plaintiffs pretrial memorandum contained no reference at all to the warrants or the breach alleged in counts 5 and 6. *See* A-797. A transcript of the trial shows that Claims 5 and 6 were never addressed at trial.

One week after the bench trial, the court issued its June 1, 2023 Opinion and Order, where the court dismissed VNUE's criminal usury defense on the ground that VNUE had failed to prove the Notes were usurious, and holding that Plaintiffs were entitled to judgment on their breach of contract claims. SPA-1. In the last paragraph of the "Findings of Fact" section, the court also held that

> [A]lthough the Plaintiffs tried to obtain shares under the Warrants pursuant to the Second Amendments, VNUE also refused to allow the Warrants to be exercised and never issued these shares to the Plaintiffs.

SPA- 10. In conjunction with the Opinion, the court ordered Plaintiffs to submit a proposed judgment with damages calculations.

Plaintiff submitted a proposed judgment for damages based on the calculations of principal, interest and penalties as set forth in the Second Amendment to the Notes, substantially similar to the calculations attached to the complaint and submitted as Trial Exhibit 15. A-1187. Plaintiffs also provided calculations "based on"defendant's failure to deliver the common stock purchase warrants pursuant to the Second Amendment." A-1182. A review of the figures seems to show that Plaintiffs calculated damages based on the assumption that it would have sold 100% of the stock at the highest single trading price over the entire life of the warrant.

VNUE objected to the warrant damages on several grounds, most notably that Plaintiffs had never attempted to exercise the Warrant. A- 1200. The court overruled VNUE's objection as untimely, stating that "Plaintiffs pursued this claim at trial," and VNUE should have raised the objection then. A- 1204.

Issue Presented:

Whether the court committed clear error when it made the finding of fact that "Plaintiffs tried to obtain shares under the Warrants pursuant to the Second Amendments, VNUE also refused to allow the Warrants to be exercised and never issued these shares to the Plaintiffs."

**ARGUMENT**

# I.   THE DISTRICT COURT'S FINDING MUST BE SET ASIDE AS CLEARLY ERRONEOUS BECAUSE IT IS NOT SUPPORTED BY ANY EVIDENCE IN THE RECORD.

### A.   Legal standard

After a bench trial, the court's "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless [they are] clearly erroneous" Fed. R. Civ. P. 52(a)(6); *see, e.g., Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985); *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 870 (2d Cir. 1994). A "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  The "clearly erroneous" standard applies whether the findings are based on witness testimony, or on documentary evidence, or on inferences from other facts. *See, e.g., Anderson*, 470 U.S. at 574; *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1176 (2d Cir. 1995).

## II.  A SEARCH OF THE RECORD REVEALS NO EVIDENCE THAT PLAINTIFFS ATTEMPTED TO EXERCISE THE WARRANTS-- OR THAT VNUE REFUSED TO ALLOW THE WARRANTS TO BE EXERCISED.

In this case, the Court must review "the entire evidence" of record to determine whether substantial evidence supports the courts finding that "Plaintiffs tried to obtain shares under the Warrants," and that "VNUE also refused to allow the Warrants to be exercised and never issued these shares to the Plaintiff."  SPA-10.

### A.  Evidence Before the Court Pertaining to Claims 5 and 6

A bench trial was held on May 23.  The trial court observed that evidence presented at the bench trial "includes the Notes and the Amendments and testimony from Whitlock, the defendant's expert Dr. Scott D. Hakala, and Feinman," who were "subject to cross and redirect examination . . . [c]ounsel also presented their summation arguments."  SPA-8.  As noted above, examination of the trial transcript demonstrates that nothing in the trial testimony pertained to exercise of the warrants, Claims 5 and 6, or otherwise supported the court's finding.

Because the trial court expressly limited the bench trial to resolution of VNUE's criminal usury defense, the evidence pertaining to Claims 5 and 6 was simply that which was contained in the materials submitted for the usury claim.

## 1.     Whitlock Declaration.

Mr. Whitlock is one of the principals of both Golock and DBW, and testified at trial (and was cross examined by VNUE) primarily on matters concerning the interest rate under the convertible notes; Whitlock did not offer testimony on Claims 5 and 6—nor did any other party.  The Whitlock Declaration is 13 pages, but only paragraph 19 pertains to Claims 5 and 6.   Paragraph 19 states:

> The second set of amendments also provided for VNUE to issue stock purchase warrants to plaintiffs.  Although plaintiffs prepared and submitted documentation to Bair[2] to enable the issuance of the warrants, they never were issued.

Whitlock Dec. at ¶19.  A-1123.  The meaning of Whitlock's statement is not entirely clear; he seems to be restating the allegations in the Complaint that claim a breach based on failure to deliver the signed warrant contract.   Mr. Whitlock's declaration does not in any way support the court's erroneous finding that Plaintiffs attempted exercise or that VNUE refused to allow exercise of the Warrants" per the court's finding.

---

[2] Referring to VNUE CEO Zach Bair.

## 2. The Amended Complaint

Any confusion about Whitlock's paragraph 19 statement may be resolved by comparing it to the allegations in the Amended Complaint on this issue, which clarifies that the "prepared and submitted documentation" referenced by Whitlock was simply a reference to VNUE having failed to return a signed copy of the warrant agreement. A-16 at ¶¶40-41 ("Plaintiffs prepared and submitted to VNUE for signature the GOLOCK and DBW Warrants" but "VNUE never signed or returned the GOLOCK and DBW Warrants" despite Plaintiff's repeated requests.) Id.

## 3. VNUE's 2023 Annual Report on File in the SEC Public Database

As announced by the Court in the pre-trial conference, the court also planned to rely on evidence from VNUE's 2017 and 2023 annual financial statements on file with the SEC (Form 10-k), because such financial statements are "part of the public record and normally relied on." A-866. The court's July 1, 2023 Opinion and Order cites both reports, and contains a large block quotation from VNUE's 2023 annual report which the court cites as evidence in support of its findings on VNUE's financial condition. *See* SPA-3.

*a)*     ***VNUE's 2023 Annual Report Indicates that Golock Received the Warrant.***

If the court had read further in VNUE's 2023 Annual Report, it would have discovered statements indicating that VNUE had granted the Warrant to Golock, and had assigned a fair market value of $28,227 (using the Black-Scholes-Merton Option Pricing model, see report at p 29).  The Report states:

> On April 29, 2019, Golock entered into an amendment with the Company to extend the maturity of the Notes until July 31, 2019.  In return, Golock received several concessions.  They received (a) a warrant to purchase 12,833,333 shares of the Company's common stock for 48 months exercisable at a strike price of $.00475 .  The Company recorded a financing charge of $28,227 related to these warrants and (b) the conversion noted above was changed from 58% to 50% of the lowest closing bid price in the 20 trading days prior to that day that the Lender requested conversion.

VNUE Annual Report Form 10k (filed 4-17-2023) at F-15. https://www.sec.gov/Archives/edgar/data/1376804/000182912623002781/vnue_10k.htm.     Admittedly, evidence that VNUE had properly granted the warrant to Plaintiffs neither proves nor disproves the Court's erroneous finding that VNUE refused to allow exercise.

**4.     Exhibit 15 to the Whitlock Declaration.**

The damages calculation shown on page 3 of Exhibit 15 ("Warrant Shares from Amendment 2" below, and A-992) are consistent with the court's finding of breach, but in no way constitute evidence in support of the that  finding.  But the

calculations raise other questions, particularly because the stock obtained from Warrant exercise in this case would only yield stock carrying a six-month restriction. Accordingly, the calculations do not address that the stock obtained from a 12/21/20 exercise could not have been sold on 3/2/21.

**Warrant Shares from Amendment 2**

|  | GOLOCK | DBW |
|---|---|---|
| **Number of Shares** | 12,833,333 | 2,866,986 |
| **Exercise Price** |  | $0.00475 |
| **Share Price at time of Amendment - 4/29/19** |  | $0.0022 |
| **Date Share Price was first > Exercise Price** |  | 12/21/20 |
| **Price on 3/2/21** |  | $0.045 |
|  |  |  |
| **Value of Shares** | $ 577,499.99 | $ 129,014.37 |
| **Cost to exercise** | $ 60,958.33 | $ 13,618.18 |
|  |  |  |
| **Net Value of Warrant Shares** | **$ 516,541.65** | **$ 115,396.19** |

## III.  NO EVIDENCE SUPPORTS THE FINDINGS ALLEGED IN  CLAIMS 5 AND 6

Finally, it is worth noting that there is no evidence in the record supporting Plaintiffs allegations of "non-delivery" either, and that those claims are likely insufficient to show breach.  Plaintiffs claim for damages for "non delivery" of the

warrants (meaning a signed warrant contract) is indistinguishable from a claim for non-delivery of stock upon tender of a valid notice of exercise. The difference is that Plaintiffs never exercised, or attempted to exercise the warrants, but nonetheless claim entitlement to stock as if it had. Because a warrant is a unilateral contract, the grantor's duty to perform is triggered only when the warrant holder tenders a valid notice of exercise. A breach occurs when the grantor of the option (1) fails to deliver the stock pursuant to a valid notice of exercise; or (2) repudiates the contract prior to the notice of exercise. *See Hermanowski v. Acton Corp.*, 580 F. Supp. 140, 143-44 (E.D.N.Y. 1983) *aff'd in relevant part*, 729 F.2d 921 (2d Cir. 1984) *(*per curiam); *aff'd*; *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002).

In any option contract, the holder the benefit of the warrant contract on *the date they exercise the warrants and receive the stock.* However, because Plaintiffs never established a breach or when it occurred, Plaintiffs simply picked the single highest trading price in the entire life of the warrant, and used that day as a valuation date. "If the purpose of damages is to put the non-breaching party in the same economic position as if the breaching party performed its contractual duties, damages should be calculated from the date that the non-breaching party expected to receive the benefit of the contract." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 384-85 (2d Cir. 2006); *Lucente*, 310 F.3d at 262.

"Warrants are simply 'a contract by which the corporation gives an irrevocable option to the holder to purchase authorized corporate stock within a period of time at a price and upon terms specified in the contract.'" *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 149 (2d Cir. 1993); *Reiss v. Financial Performance Corp.* 97 N.Y.2d 195 (2001) ("[S]tock warrants are contracts entitling the holder to purchase a specified number of shares of stock for a specific price during a designated time period."). Accordingly, failure to deliver a signed copy of the contract is in no way conclusive that the warrant was repudiated or not granted.

## IV. <u>CONCLUSION</u>

For the reasons discussed herein, Defendant-Appellant VNUE respectfully requests that this Court should set aside the district court's finding of fact as clearly erroneous.

Dated October 13, 2023

Respectfully Submitted,

*/s/* Marjorie Santelli
Marjorie Santelli, Esq.
/s/ Mark R. Basile
Mark R. Basile, Esq.
THE BASILE LAW FIRM P.C.
390 N. Broadway, Ste 140
Jericho, New York 11753
Tel. 516.455.1500
Fax. 631.498.04 78
*marjorie@thebasilelawfirm.com*
*mark@thebasilelawfirm.com*

**CERTIFICATE OF COMPLIANCE**

This Opening Brief by Appellant DarkPulse, Inc., has been prepared in accordance with Fed. R. App. 32(a)(7)(B) and Local R. 32.1 using: Microsoft Word, Times New Roman, 14 Point Type, with a total word count of less than 13,000 words, exclusive of the Corporate Disclosure Statement, Table of Contents, Table of Authorities, signature block, and Certificate of Compliance.

Dated October 13, 2023