# 23-0857-cv

## United States Court of Appeals

*for the*

## Second Circuit

DBW INVESTMENTS, LLC, GOLOCK CAPITAL, LLC,

*Plaintiffs-Counter Defendants-Appellees,*

v.

VNUE, INC.,

*Defendant-Counter Claimant-Appellant,*

CROSSOVER CAPITAL FUND II, LLC, DAVID WHITLOCK,
CHRISTOPHER GOROG, KENNETH LUSTIG,

*Counter Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-
## COUNTER CLAIMANT-APPELLANT

MARK R. BASILE
MARJORIE M. SANTELLI
THE BASILE LAW FIRM, P.C.
*Attorneys for Defendant-Counter
Claimant-Appellant*
390 North Broadway, Suite 140
Jericho, New York 11753
(516) 455-1500

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................1

    A.    Golock has conceded the issue presented. ...................................1

    B.    Summary of erroneous statements. ..............................................3

II.    Golock clarifies that its Claims of Breach Were *Not* Based On Refusal to honor the warrant-- But Ignores that the Court Found *Precisely That.* ..............................6

    C.    Despite this "Clarification," Golock's Brief Repeatedly Alleges that VNUE "Refused to Issue *or Honor*" the Warrants. ...........................................7

    D.    *Diamond v. ShiftPixy Only* Illustrates the Weakness of Golock's "Nondelivery" claim. ...........................................7

        1.    Unlike this case (1) the *Shiftpixy* Plaintiff was Never in Possession of the Warrant Agreement, (2) there was No Dispute that Plaintiff Demanded Warrants and Stock; and (3) No Dispute that the Defendant Refused to Convey the Stock or Warrants Plaintiff Demanded. ......................................8

        2.    That Golock is Unable to Present a *Successful* Failure to Deliver Warrants claim is unsurprising. ...........................................9

    E.    Golock rejects evidence of warrant issuance in VNUE's SEC Filings because VNUE "presented absolutely no argument at trial" on warrant non-delivery. ...........................................10

        1.    Golock fails to mention that NO PARTY presented argument at trial on the Warrant non-delivery claims. ...........................................11

        2.    Courts Routinely take judicial notice of public documents on file with the SEC. ...........................................11

    F.    Golock's "Unchallenged" Trial Evidence Consists of a Single ambiguous Statement. ...........................................12

G.     Golock Contends that it "Would have Demonstrated" that VNUE Would Not Have Honored a Warrant Exercise, but this Claim Only Highlights the district court's Error. ...................................................................................................13

III.   VNUE Pursued the Usury Defense because Defendants Have the Burden of Proof to Establish Affirmative Defenses....................................................................14

IV.   CONCLUSION...................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Adar Bays v. GeneSYS Id*, 37 N.Y.3d 320 (2021) ....................................................14

*Brown v. City of N.Y.*, 862 F.3d 182 (2d Cir. 2017)....................................................4

*Clarex Ltd. v. Natixis Sec. Ams. LLC*, 2014 U.S. Dist. LEXIS 121335 (S.D.N.Y. Aug. 29, 2014) ...............................................................................................................7

*Diamond v. ShiftPixy, Inc.*, 2021 U.S. Dist. LEXIS 135478 (S.D.N.Y. July 19, 2021) ...............................................................................................................................7

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) ...............................................................................................................................4

*Jakubiak v. Quantumscape Corp.*, 2023 U.S. Dist. LEXIS 175870 (S.D.N.Y. Sep. 28, 2023) ............................................................................................................11

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991).....................................11

*LG Capital Funding, LLC v. Accelera Innovations, LLC*, 2018 U.S. Dist. LEXIS 137490, (E.D.N.Y. Aug. 10, 2018) .....................................................................13

*Maxim Grp. LLC v. Life Partners Holdings, Inc*., 690 F. Supp. 2d 293 (S.D.N.Y. 2010) ...............................................................................................................9

*Oscar Gruss & Son v. Hollander*, 337 F.3d 186 (2d Cir. 2003) ...............................9

*Red Tree Invs., LLC v. Petróleos de Venez., S.A.*, 82 F.4th 161, (2d Cir. 2023) ......12

*W. Va. Coal Workers'Pneumoconiosis Fund v. Bell*, 781 F. App'x 214 (4th Cir. 2019) ...............................................................................................................................4

In Reply to the *Brief for Plaintiff-Appellees* submitted by Plaintiff-Appellees

Golock Capital, LLC, and DBW Investments, LLC, et al., (collectively, "Golock"),

Defendant-Appellant VNUE Inc., ("VNUE") states the following:


**Issue Presented:**

> Whether the court committed clear error when it made the finding of fact that "Plaintiffs tried to obtain shares under the Warrants pursuant to the Second Amendments, VNUE also refused to allow the Warrants to be exercised and never issued these shares to the Plaintiffs."

**Short Answer**: Yes, the lower court erred.  Not only was there no evidence for the court's finding, these facts were never even *alleged*.

## I.    PRELIMINARY STATEMENT

### A.    Golock has conceded the issue presented.

It is necessary to repeat *Issue Presented* here in the Reply brief to demonstrate

that, remarkably,  Golock has completely ignored the issue presented for review, and

instead addresses an entirely different question, with the pretense that its newly-

created issue is what VNUE argued.  *See* Golock Br. at 8.  While it is common for

an appellee to *rephrase* the Issue presented, that is not what happened here; instead,

Golock has presented a *completely different question,* stated as:

> Whether the district court properly accepted plaintiffs' calculation of its damages for non-delivery of common stock purchase warrants where the issue at trial was uncontested by defendant and only raised for the first time in a letter objecting to entry of a judgment for the uncontested amounts?

1

Golock Br. at 3. To state the obvious, VNUE's *Issue Presented* has nothing to do with Golock's damages calculation. Rather, VNUE challenges the basis for district court's finding of breach in the first place—to wit, the finding that Golock attempted to exercise the Warrant and that VNUE refused to honor it. *See* Sp. Appx. At 10. Not only was there no evidence for the court's holding, these facts were never even *alleged*.[1]

Golock never addresses this error, but instead spends most of its brief knocking down its "straw man" claim, mostly arguing that the district court correctly found that VNUE "waived" any challenge to the damage calculations. *See*, *e.g.,* Golock Br. at 10-11. However, even if true, Golock never explains how the court's correctness on one element of a claim (damages) demonstrates correctness on the entirely different element of breach.[2] If Golock's approach is simply to "defend the decision of the lower court," this tactic does not work. *Brown v. City of N.Y.*, 862 F.3d 182, 188 (2d Cir. 2017).

---

[1] The district court essentially found that VNUE had dishonored the warrants, *i.e.*, failed to honor the obligation to deliver stock contained in the warrants.

[2] In order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach. *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

As a technical matter, Golock has forfeit any response to the issue presented. *See W. Va. Coal Workers' Pneumoconiosis Fund v. Bell*, 781 F. App'x 214, 226-27 (4th Cir. 2019) (holding that "an appellee's wholesale failure to respond to a conspicuous, nonfrivolous argument in the appellant's brief ordinarily constitutes a forfeiture.").

VNUE will address Golock's arguments to the extent they have any relevance to the Issue Presented, or if they respond to other arguments in VNUE's opening brief. VNUE's opening brief discusses the substantial weaknesses of Golock's claims of breach in counts 5 and 6 of the complaint in order to demonstrate that the district court did not simply misstate the claims. The district court's findings must be vacated and the matter remanded, so that Golock's extremely flawed claims of warrant non-delivery may be properly adjudicated.

**B.   Summary of erroneous statements.**

Golock's preliminary statement contains several incorrect or misleading assertions, which are repeated throughout its Brief. VNUE has flagged these statements in the excerpt below, with a brief explanation following. Golock states:

> By this appeal, defendant-appellant VNUE, Inc. ("VNUE") seeks for the first time to brief and argue an issue that it waived in the district court. **ERROR 1.** In the proceedings below, the sole disputed issue was VNUE's affirmative defense of usury interposed in an attempt to avoid repaying a series of loans that VNUE solicited and obtained from plaintiffs. **ERROR 2.** Following a bench trial, the court denied that

defense and awarded plaintiffs judgment on their otherwise uncontested claims for breach of contract.  **ERROR 3**.

The issue that VNUE now raises was an afterthought that it never pursued at trial. VNUE objects to the damages awarded to plaintiffs based on the value of common stock purchase warrants that VNUE refused to issue or honor.  **ERROR 4, 5.**  . . . . The unchallenged evidence at trial was that VNUE failed to issue or honor the warrants and that, consequently, plaintiffs sustained damages.  **ERROR 5.**

Golock Brief ("Br.") at 1.

**ERROR 1**:     As it pertains to VNUE's *actual* issue presented, this statement

is entirely false; VNUE never "waived" its right to challenge the claims of breach in

counts 5 and 6[3] (and was never presented with the novel claim that it had refused to

allow warrant exercise).   However,  the allegation of "waiver" in this sentence[4]

---

[3] The counts listed in Golock's Complaint (A- 24-37) may be summarized as:
**Counts 1 and 2** ("Breach of the Golock [and DBW] Notes"): Plaintiffs alleged that VNUE defaulted on the Notes as Amended and that they are therefore due a total of $575,281.95 in unpaid principal, interest and default penalties.
**Counts 3 and 4** ("Breach of contract - Refusing to Convert the Golock [and DBW] Notes"): Plaintiffs alleged multiple breaches based on VNUE's failure to honor Golock's requests for conversion, and sought damages for the value of the shares it should have received upon conversion, in the amount of at least $5,000,000.00.  A- 16.
**Counts 5 and 6 –** (Breach of Contract and Damages for "Failure to Deliver" Warrants.)   **(**Counts 7 and 8 (declaratory relief, specific performance) have no relevance here).


[4] The court's ruling that VNUE had waived any challenge to the warrant damages calculation is arguably an abuse of discretion, but that issue is not raised in this appeal in light of the obvious error concerning breach.

appears to reference Golock's own "damages" Issue Presented, not the Issue raised in this appeal.

**ERRORS 2, 3:**  Since "the proceedings below" includes the entire lawsuit (and not just the trial), characterizing usury as "the sole disputed issue" is simply incorrect.  VNUE disputed the *allegations of breach* in counts 5 and 6 from the outset.  **ERROR 3:**  Golock repeats this error by stating the judgment applied to "*otherwise uncontested* claims for breach of contract."  VNUE did not contest the breaches alleged in counts 1- 4  (hence the raising of an affirmative defense) but it is *undisputed* that VNUE denied—repeatedly-- the allegations of breach contained in counts 5 and 6.

**ERROR 4:**   As with Error 1, Golock here makes the bizarre claim that VNUE's appeal is a challenge to the court's *damages ruling*.  VNUE challenges the courts finding that "Plaintiffs tried to obtain shares under the Warrants," and that "VNUE also refused to allow the Warrants to be exercised," both of which allege dishonor of the warrant.  *See* VNUE Opening Br. at 1.

**ERROR 5:**  Throughout its brief,[5] Golock describes counts 5 and 6 as for warrants "that VNUE refused to issue *or honor*."  This assertion is half-truth.

---

[5] *See* Golock Br. at 1, 3, 4, 8, 10, 14, 16, 24.

Golock never alleged that VNUE "refused to honor" the Warrants (that is, refused to deliver the stock in response to a proper exercise); on the contrary, Golock makes clear that its *only claim* was that VNUE had failed to "*deliver*" the warrants. This error is discussed more fully below.

## II. GOLOCK CLARIFIES THAT ITS CLAIMS OF BREACH WERE *NOT* BASED ON REFUSAL TO HONOR THE WARRANT-- BUT IGNORES THAT THE COURT FOUND *PRECISELY THAT*.

On page 19 of its Brief, Golock makes clear that counts 5 and 6 "were for breach of contract for failure to deliver the warrants," and *not* for refusal to deliver stock upon an attempted exercise. Golock describes its claims as "similar to those advanced in *Diamond v. ShiftPixy, Inc.*, 2021 U.S. Dist. LEXIS 135478 (S.D.N.Y. July 19, 2021) and *Clarex Ltd. v. Natixis Sec. Ams. LLC*, 2014 U.S. Dist. LEXIS 121335 (S.D.N.Y. Aug. 29, 2014). Golock argues that VNUE's caselaw is inapplicable because it "does not address the nondelivery of warrants," and that

> Rather, it concerns a defendant's refusal to deliver stock upon the attempted exercise of a stock option. Assuming *arguendo* that stock options are analogous to warrants, the case still is inapposite because, unlike that case where the stock option had been issued, here plaintiffs never received the warrants.

Id. (citations omitted). By this clarification, Golock recognizes the difference between a breach based on "failure to deliver" a warrant and a breach based on failure to *honor* a warrant – and specifically points out that counts 5 and 6 *alleged only non-delivery*. Essentially, Golock *concedes the error* of the district court's

6

finding that "[p]laintiffs tried to obtain shares under the Warrants" and that VNUE "refused to allow the Warrants to be exercised and never issued these shares to the Plaintiff." Sp. Appx at 10.

## C. Despite this "Clarification," Golock's Brief Repeatedly Alleges that VNUE "Refused to Issue *or Honor*" the Warrants.

In direct contravention of its previous clarification, Golock repeatedly characterizes the alleged breaches as for refusal to "deliver or honor" the warrants.[6] This description is deliberately confusing: No allegation of warrant dishonor (failure to deliver stock in response to a warrant exercise) was ever made, at any point in time. Golock's only claim was that the warrants were not "delivered."[7]

## D. *Diamond v. ShiftPixy Only* Illustrates the Weakness of Golock's "Nondelivery" claim.

---

[6] *See, e.g.*, Golock Br. at 8 ('refusing to issue or honor the warrants.") 18 ("Warrants that VNUE refused to issue or honor") 10 ("the unchallenged evidence at trial was that VNUE failed to issue or honor the warrants.").

[7] Golock goes so far as to allege that "the irrefutable facts that there were no warrants issued for plaintiffs to exercise and that VNUE had acted to prevent the issuance of any shares to plaintiffs." Golock Br. at 13. Setting aside the obviously false claim of irrefutability, this statement is self-contradictory. Golock does not explain how it is that "VNUE had acted to prevent the issuance" of warrant shares to Golock (in the present context, issuance of shares would only be in response to warrant exercise) if Golock had no warrants to exercise in the first place because of nondelivery.

Contrary to Golock's description, neither *Diamond v. Shiftpixy* nor *Clarex v. Nataxis* bear much similarity to this case. First, *Clarex* has no similarity to this case at all-- the "warrants" at issue in *Clarex* were not stock purchase warrants, but were essentially vouchers that entitled the holder to payments based on the price of oil. *Id*. at *1-2. That Golock even cited this case simply illustrates the paucity of cases on warrant non-delivery.

**1.     Unlike this case (1) the *Shiftpixy* Plaintiff was Never in Possession of the Warrant Agreement, (2) there was No Dispute that Plaintiff Demanded Warrants and Stock; and (3) No Dispute that the Defendant Refused to Convey the Stock or Warrants Plaintiff Demanded.**

*Shiftpixy* only highlights the weakness of Golock's claim. Unlike Golock (who admits being in possession of the entire warrant contract, complete with a notice of exercise form (*see* A- 16 at ¶¶40, 41; A-128 at ¶ 19)) the *Shiftpixy* plaintiff was simply promised warrants (and cash) if and when it performed. *Shiftpixy*, 2021 U.S. Dist. LEXIS 135478 at *3. The dispute arose when the plaintiff (Diamond) noticed that the company's SEC filings exhibited a warrant with an antidilution provision, and assumed that his warrant contained the same provision. On this basis Diamond demanded entitlement to 1,179,971,980 warrants instead of the original 1,685, which the company refused. *Id* at *27.

Also unlike this case, there was no dispute that Diamond had demanded the warrants and no dispute that the defendant had refused. The only question before

the *Shiftpixy* court was whether Diamond's warrant contract contained an antidilution clause—a fact not known because the warrant contract was never in his possession. Importantly, the court resolved the case (dismissing Diamond's claim) by assessing the company's public financial statements on file with the SEC. The SEC statements showed that the plaintiff had been issued the warrants, but did not (and courld not) add the antidilution clause. *See id.* at *36.

**2. That Golock is Unable to Present a *Successful* Failure to Deliver Warrants claim is unsurprising.**

As noted in VNUE's opening brief, claims of breach for failure to "deliver" a warrant are uncommon, because a stock purchase warrant is simply a right to purchase stock. When granted by a publicly traded company, the warrant is simply an obligation to be recorded in the books and declared in company SEC filings. Actual possession of the warrant contract is typically "nothing more than a formality." *Maxim Grp. LLC v. Life Partners Holdings, Inc*., 690 F. Supp. 2d 293, 301 (S.D.N.Y. 2010). As the court held in *Maxim*, a warrant holder that is aware of all the material terms necessary to effect an exercise cannot claim to be prejudiced by not possessing the actual warrant contract. *Id.*

*Oscar Gruss & Son v. Hollander*, 337 F.3d 186 (2d Cir. 2003) is one of very few instances where this Court addressed a (successful) claim of breach based on failure to deliver the warrant contract itself. But the warrants promised in *Oscar*

9

*Gruss* were not granted by a publicly traded company, and would never have been

reported in an SEC filing – they were granted by the defendant as an individual—

who promised plaintiffs the right purchase a block of 25,000 shares that he held

personally. *See id*. 337 F. 3d. at 190. Further, there was (1) no dispute that plaintiffs

never possessed a warrant contract and (2) no dispute that the plaintiffs had made a

demand for warrants or stock and that *defendant had refused.*

**E.     Golock Rejects Evidence of Warrant Issuance in VNUE's SEC Filings Because VNUE "Presented Absolutely no Argument at Trial" on Warrant Non-delivery.**

As observed in VNUE's opening brief, VNUE's 2023 Form 10-K states very

clearly that VNUE delivered the warrants to Golock. *See* VNUE Annual Report

Form                            10k                            p.                            F-15.

https://www.sec.gov/Archives/edgar/data/1376804/000182912623002781/vnue_10

k.htm.

VNUE's Form 10-K is already part of the trial record. The district court relied

heavily on VNUE's 2017 and 2013 annual reports in deciding the case and

announced its intent to do so at the pre-trial conference, where the court essentially

incorporated these documents into the trial record. *See* Opinion, A-1150; Conf. Tr.,

A-863, 865. Golock attempts to discount the evidence in the 10-K, because "VNUE

presented absolutely no argument at trial" showing  "that there was conflicting

evidence respecting the non-delivery of warrants." Golock Br. at 13.

**1.    Golock fails to mention that NO PARTY presented argument at trial on the Warrant non-delivery claims.**

What Golock neglects to mention however, is that *no party* presented argument at trial on its warrant non-delivery claims, *because the trial court limited the trial to the usury question.  See* Pretrial Conf. tr, A-851 ("The only issues for trial are that affirmative defense of usury").  Moreover, if any party were obligated to raise the claims of breach in counts 5 and 6 at trial, it would be Golock, who had the burden of proof to show breach.

**2.    Courts Routinely take judicial notice of public documents on file with the SEC.**

Courts routinely take judicial notice of public disclosures on file with the SEC. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  As discussed at length by the *Shiftpixy* court, publicly traded companies (like VNUE) are obligated by law to file various financial statements with the SEC, and are legally bound  to ensure the accuracy of all financial disclosures.  Issuance of stock purchase warrants must be disclosed in these reports, including the number of warrants issued and to whom, and key features of those warrants, such as the exercise price and expiration date.  *See* 17 C.F.R. §§ 229.10(a)(2); 229.202(c); *see also Jakubiak v. Quantumscape Corp.*, 2023 U.S. Dist. LEXIS 175870, at *10-11 (S.D.N.Y. Sep. 28, 2023).

**F.      Golock's "Unchallenged" Trial Evidence Consists of a Single ambiguous Statement.**

VNUE stands by its assertion that paragraph 19 of the Whitlock affidavit is not evidence of the breach alleged in counts 5 and 6, (or if it is evidence, as opposed to a conclusory statement, it is very weak evidence).

Counts 5 and 6 of the Complaint state only that VNUE "failed to deliver the warrant," but then goes on to establish that Golock had the entire warrant contract in its possession from day one. A- 23-24. Paragraph 19 confirms that Golock was in possession of the warrant documents at all times, but adds that the warrants "never were issued," stating:

> The second set of amendments also provided for VNUE to issue stock purchase warrants to plaintiffs. Although plaintiffs prepared and submitted documentation to Bair to enable the issuance of the warrants, they never were issued.

A - 1128, ¶ 19. The Whitlock affidavit does not explain what "never were issued" actually means, and nowhere establishes, or even alleges, that Golock demanded delivery of warrants or warrant stock and that VNUE refused. However, because counts 5 and 6 were never actually adjudicated, no one ever inquired with Whitlock whether "issuance" is synonymous with "delivery," and Golock was never forced to explain what prevented it from attempting to exercise the warrant when it had the all of the warrant documents in its possession.

**G.    Golock Contends that it "Would have Demonstrated" that VNUE Would Not Have Honored a Warrant Exercise, but this Claim Only Highlights the District court's Error.**

Golock finally argues that "[h]ad it sought to make exercise of the warrants an issue at trial, plaintiffs easily could and would have demonstrated that VNUE would not issue either the warrants or the shares."[8]  Golock Br. at 15.  This argument cannot retroactively save the district court's erroneous finding—it simply highlights that Golock never alleged the facts found by the district court.   If Golock wishes to present more evidence, Golock should agree to a remand for proper adjudication of counts 5 and 6, where it may present all the evidence it claims to have.   However, Golock should also be prepared to address VNUE's evidence, which shows that Golock knew fully well that it could exercise the warrants, but made an intentional choice not to do so.

---

[8] This appears to be the only place where Golock addresses the error in VNUE's *Issue Presented*.

**III.  VNUE PURSUED THE USURY DEFENSE BECAUSE DEFENDANTS HAVE THE BURDEN OF PROOF TO ESTABLISH AFFIRMATIVE DEFENSES.**

Golock alleges that VNUE's focus on the usury defense was part of a "deliberate" strategy to avoid questions on warrant non-delivery, and that as a result, VNUE has "waived" all  defenses other than usury.  Golock Br. at 18.  This is obviously incorrect.  VNUE "pursued" the usury defense because usury is an affirmative defense, and VNUE had the burden of proof to establish it.  "The burden of proof to establish an affirmative defense  . . . falls on the defendant." *Red Tree Invs., LLC v. Petróleos de Venez., S.A.*, 82 F.4th 161, 171 (2d Cir. 2023).

The claims of breach in this case involved convertible promissory Notes (counts 1-4) and stock-purchase warrants (counts 5 and 6.).  VNUE did not contest the breaches alleged for the Notes – it *admitted* the allegations of breach for counts 1- 4—but interposed the affirmative defense of criminal usury to argue that the Notes were void.  On the other hand, VNUE *denied* the allegations in counts 5 and 6, but since the warrants were given as consideration pursuant to the Notes, a finding of usury would void the warrants as well.

VNUE's focus on the usury defense appears entirely rational even beyond its burden of proof obligation.  Golock demanded 5 million dollars in damages for the breaches alleged in counts 1-4, and only $474,000 in damages for the breaches (alleging failure to deliver the warrants) in counts 5 and 6.  Further, as noted above,

success on the usury defense would void the note and the warrants, thereby obviating

the need to litigate any further. Moreover, it was Golock that strategized to radically

amend its claims on the eve of trial. Two weeks before trial, Golock withdrew its

multimillion dollar claims in counts 3 and 4,[9] increased alleged damages for counts

5 and 6 to $750,000, and for the first time included a calculation showing the basis

for the warrant damages calculation.

Tellingly, Golock *had* to withdraw counts 3 and 4 because of its arguments in

defense of the usury claim,[10] where Golock essentially claimed that VNUE stock

---

[9] Counts 3 and 4 alleged $4,000,000 and $1,000,000 in damages, respectively, based on the value of stock that VNUE failed to deliver when Golock attempted to convert the Notes. *See* A- 38-39.

[10] A brief explanation of the other claims:

A convertible note includes a "conversion option," which gives the lender the right to take repayment of the loan in stock instead of cash. It is similar to a call option or a warrant, except the lender uses the debt under the note (principal plus accrued interest) to pay the exercise price, instead of paying in cash. *See LG Capital Funding, LLC v. Accelera Innovations, LLC*, 2018 U.S. Dist. LEXIS 137490, at *17 (E.D.N.Y. Aug. 10, 2018).

For the Notes in this case (as amended), the conversion options are "floating price" conversion options, which do not have a fixed strike price; instead, the price "floats" at a fixed percentage *discount* to the market price at the time of exercise. Per Note amendment 2, Golock was given the right to acquire VNUE stock at a 50% discount to the market price—meaning that Golock would acquire $200 worth of freely-trading VNUE common stock for every $100 worth of debt it chose to convert- a guaranteed 100% gain.

It was this "guaranteed gain" that the New York Court of Appeals addressed in *Adar Bays v. GeneSYS Id*, 179 N.E.3d 612 (2021). In that case, the Court of

had a much lower value than the market price indicated when conveyed in the large quantities needed to repay the loans. More precisely, Golock argued (and the district court agreed) that VNUE stock was so thinly traded (it would take *eight years* to fully convert the Note) that it was actually worth only *a fraction* of the market price in the context of an interest calculation based on an *annualized* percentage rate. Given this contention, Golock could hardly maintain, as it did in counts 3 and 4, that it suffered 5 million dollars in damages as a result of VNUE's failure to deliver conversion stock. It would also lead one to wonder why Golock would have any desire to exercise the Warrants (which would cost Golock $65,000, and yield restricted stock). This Court should remand this matter to the district court so that these questions may properly be addressed.

---

Appeals held that a floating price conversion option had obvious value, which must be added to the interest rate calculation for purposes of assessing criminal usury. *Id.* at 612 (holding that" [b]ecause floating-price conversion options have intrinsic value that is bargained for in these loans, they should be treated as a component of interest.")

However, the value added by a conversion option could be extremely low in some situations, and is a question of fact. In this case, expert testimony at trial (which the court adopted) suggested that, at the time of the loan, VNUE common stock was so thinly traded that it would take Golock *eight years* to convert and sell the stock from conversion. *See* Sp. Appx at 24.

## IV.   CONCLUSION

For the reasons stated herein and in VNUE's opening brief, defendant - Apellant VNUE, Inc., respectfully requests that this Court vacate the district court's ruling on the warrants, and remand the matter with instructions that the court address and properly adjudicate the claims of breach alleged in counts 5 and 6 of Golock's complaint.

Dated  February 2, 2024

Respectfully Submitted,

*/s/* Marjorie Santelli
Marjorie Santelli, Esq.
/s/ Mark R. Basile
Mark R. Basile, Esq.
THE BASILE LAW FIRM P.C.
390 N. Broadway, Ste 140
Jericho, New York 11753
Tel. 516.455.1500
Fax. 631.498.04 78
*marjorie@thebasilelawfirm.com*
*mark@thebasilelawfirm.com*

**CERTIFICATE OF COMPLIANCE**

This Reply Brief by Appellant VNUE, Inc., has been prepared in accordance with Fed. R. App. 32(a)(7)(B) and Local R. 32.1 using: Microsoft Word, Times New Roman, 14 Point Type, with a total word count of less than 5,000 words, exclusive of the, Table of Contents, Table of Authorities, signature block, and Certificate of Compliance.

Dated February 2, 2024.